IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| BRYAN RICE LONG, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
| | ) No. 10-6019-CV-SJ-JCE-SSA |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| Defendant. | ) |

### ORDER

The case involves the appeal of the final decision of the Secretary denying plaintiff's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §401 et seq. Pursuant to 42 U.S.C.§ 405(g), this Court may review the final decision of the Secretary. For the reasons stated herein, the decision of the Secretary will be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of

establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 33 years old at the time of the hearing before the ALJ. He alleges that he is unable to work because of a back injury and pain he suffers from because of an on-the-job

accident.  He has a high school education, and past relevant work as a railroad car maintenance person, construction worker, highway worker, and cable splicer.

At the hearing before the ALJ, plaintiff testified that he last worked in July of 2006.  At that time, he had a light-duty job, which the company had created where he was supposed to enter pictures of train parts into a computer.  He indicated that he did not really have much to do.  He stated that he was fired from the job after about two years because his company, Herzog, tried to send him back to his former job, which was as a maintenance worker on trains.  He had done this for about 3 ½ years.  He traveled all over the country.  He fell on the job, and injured his back in August of 2004.  Before that job with Herzog, he had worked for MODOT doing construction, carpentry, and landscape work.  He had prior military service, work with a fiber optic company, and bridge building.  Plaintiff testified that he cannot work now because of his back and lower legs.  He cannot sit or stand for very long.  He has to lie down a lot during the day, and does not sleep well at night.  Sitting puts too much pressure on his lower spine, and causes radiating pain down into his legs, including pain in his right knee and leg, and in his left big toe.  Pain also interferes with his concentration.  He testified that he was off work less than a week before he went back to light duty.  At first, he was told his pain was just muscle spasms.  He performed the light duty work for two years.  During that time, he had several back surgeries.  He also got a settlement in a worker's compensation claim, which entitled him to payment for the rest of his life.  Plaintiff testified that he contacted vocational rehabilitation services to see if there was something he could do. They suggested college, but he could not sit for a three-hour SAT test.  He testified that he could not even sit through an hour-and-a-half evaluation.  The evaluation was broken up into one-half-hour segments.  He stated that it was determined that he could not return to manual labor, and college was not really an option.

Plaintiff testified that he had had four surgeries on his back, between the end of 2004 and July of 2005. The first surgery was exploratory, and the three others were to correct his problem. He had an artificial disc placed in his back. Since his last surgery in 2005, the doctors have talked to him about additional surgery in the form of spinal fusion, but decided against it because they didn't believe it would improve his pain. He has continued to have pain. At first, after the injury, he had pain in his back and right leg, about down to his knee. After the artificial disc was implanted, he started getting pain in his left leg, which he hadn't previously had. He has also undergone physical therapy, and has had injections. Plaintiff testified that the best way to relieve his pain is to lie down in a love seat and elevate his legs; his pain gets really bad in the middle of the afternoon. He has taken Oxycodone for pain, and did take Valium and Relafen, but had a bad reaction to the latter. His pain is normally in the range of five to six on a ten-point scale, and he only takes Oxycodone when his pain gets to be about a nine, "when I can't take it anymore." [Tr. 32]. He estimated that he only took the medicine twice a month, as he has side effects such as nausea and the inability to function. He needs to lie down once he has taken an Oxycodone, and stated that if he takes one, he is "down for the day. Or a good six hours anyway I should say." [Tr. 33]. His pain is exacerbated when he tries to do too much, like driving too far. Plaintiff testified that he can sit in a chair for 15 minutes to half an hour, unless it's late in the afternoon, when he can't sit at all. He can stand still for a few minutes, and if he shifts his weight back and forth, can stand for about 15 minutes. Regarding walking, he can walk further earlier in the day. He could probably walk "maybe to a half mile, maybe a quarter mile in the morning. But I mean that's with the breaks." [Tr. 36]. Plaintiff then testified that he thought be might be able to walk a half mile or so without stopping, but he didn't know if he had done this for a long time. He tried to walk after his first surgery, trying to do what he could. He thought

he could lift ten pounds.  He stated that he will lie down about three times a day; once in the morning for 45 minutes; once in the afternoon for about three hours; and then he will usually lie down in the evening for the rest of the evening.  His pain increases as the day goes on.  Plaintiff testified that he needed help in the morning with personal hygiene, which his wife assists him with.   She also helps getting his shoes and socks on.  In the morning, he usually reads the paper, although sometimes he just can't concentrate on it because of pain.  He doesn't do any household chores, but he does drive.  He lives in the country, and drives for about 30 miles or so, with a ten to fifteen minute break.  If they are going really far, his wife will drive, but they haven't been anywhere in a long time.  His wife drove to the hearing in Kansas City from Mound City, and they came down the night before so his back wouldn't hurt too bad the next morning.

The ALJ re-examined plaintiff regarding his light duty work at Hertzog for the two year period.  He did some research-type work at first on the computer; then he did GPS records work on the computer.  After that he did inventory.  He never worked a full week or a full day.  Usually he worked between three and four days, for about three to four hours a day.

According to the testimony of the vocational expert, a person who would be limited to light work, but who could not lift below the waist level, and could not climb ladders, ropes and scaffolds, could perform light unskilled work. This could include retail marker, electronic sub assembler, and folding machine operator.  If the person were limited to alternating between sitting and standing every 15 to 30 minutes, the vocational expert testified that these jobs could still be performed, as they were all performed at bench high with a sit or stand option.  If the person were limited to sedentary work with alternating sitting and standing every 15 minutes, there would be sedentary jobs that would allow a person to sit or stand every 15 to 30 minutes.  If the need to lie down on a daily basis from 45 minutes to three hours a day  were incorporated

into the first hypothetical posed by the ALJ, there would be no jobs available. Plaintiff's counsel also presented the vocational expert with the Medical Source Statement ["MSS"] completed by Dr. Fernandez. The vocational expert testified there would be no work available based on the restrictions imposed by the doctor for sedentary work, and no work available if the person had to lie down on a daily basis for 45 minutes to three hours.

The ALJ found that plaintiff had engaged in substantial gainful activity since August 14, 2004, the alleged onset date. He made this finding because plaintiff performed light-duty work through July 14, 2006. Although his work was only part-time, the ALJ relied on the regulations to conclude that plaintiff's part-time work did constitute substantial gainful employment, and therefore, that the earliest date for potential disability would not start prior to 2007. He concluded that plaintiff was not fully credible. It was his finding that plaintiff has severe impairments of "degenerative disc disease in the lumbosacral spine, status post by portal arthroscopic microdiscectomy at L3-L4 and insertion of a prosthetic disc at L5-S1. . . ." [Tr. 11]. He found that plaintiff is obese, with fluctuating weight at around 285 pounds in mid-2006, but that this was not a severe impairment, as he was able to work in 2005-06 without significant limitations based on weight. The ALJ noted that plaintiff has essential hypertension, which is controlled with medication. Therefore, this does not constitute a severe impairment. He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. It was his finding that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC"] to perform light work with limitations. "[H]e cannot perform any lifting below the waist level and cannot work on ladders, ropes or scaffolding. He is unable to perform any climbing. All other postural positions can be performed on an occasional basis." [Tr. 12]. Therefore, the ALJ found that plaintiff was not

under a disability as defined by the Act.

In reaching his decision, the ALJ rejected plaintiff's contention that he meets the listed impairment 1.04. The ALJ concluded that plaintiff's deep tendon reflexes, and sensation and motor functioning have been normal. In November of 2008, at an outpatient examination, his station and gait were normal, but he did have limitation of motion; straight leg raising was negative, and deep tendon reflexes were equal, active and symmetrical in the lower extremities; and he had some trouble heel and toe walking. In December of 2008, the examination showed some limitation of motion, but motor, sensory and reflexes were all within normal limits. Therefore, he opined that plaintiff's back condition did not meet the listed impairment.

The ALJ accepted the findings of plaintiff's treating surgeon, Dr. Reed; he rejected the opinion of Dr. Neighbors, an orthopedic surgeon who evaluated plaintiff in September of 2006. He also rejected an MSS prepared by Dr. Fernandez, who had treated plaintiff between August of 2008 and January of 2009. The ALJ noted plaintiff's good work history, but stated that "the record clearly shows that he worked at a substantial gainful activity level well beyond the day he alleges he became disabled." [Tr. 13]. He also observed that the treating surgeon indicated that plaintiff exaggerated his symptoms. Regarding plaintiff's allegations of pain, the ALJ found that there was no support in the record for his claim that he needed to lie down and elevate his legs because of pain. He observed that plaintiff can drive, only takes pain medicine about two times a month, and can walk half a mile. To further belie plaintiff's assertion regarding the need to lie down, the ALJ noted that a treating physician advised him to exercise, which is inconsistent with the need to lie down.

Plaintiff contends that the ALJ erred in determining that obesity was not a severe impairment; erred in his RFC finding; erred in according inadequate weight to the opinions of

treating and examining physicians; and erred in his credibility determination. He also submits that the ALJ erred in his reliance on the vocational expert's testimony and finding that he could perform other work.

A review of the medical records in this case indicate that plaintiff suffered a back injury as a result of an on-the-job accident for which he had several surgeries and a prosthetic disc implanted, which improved his symptoms after 2004, the year of the injury. Subsequently, medical tests, including MRIs, CT scans, and x-rays showed no stenosis, nerve root impingement, or other nerve injury. The record indicates, moreover, that plaintiff was able to perform light work for almost two years after his alleged disability onset, that he infrequently sought treatment, and that he rarely took pain medication after his surgeries. The ALJ afforded the most weight to the treating surgeon in finding that plaintiff could perform a limited range of light work.

Turning first to plaintiff's claim that the ALJ erred in determining that obesity was not a severe impairment, the ALJ reached this conclusion because plaintiff had continued to perform substantial gainful employment beyond his alleged disability date, with no significant limitation because of his weight. Plaintiff contends that he gained over 60 pounds after his back injury, and that the ALJ should have found obesity to be a severe impairment in taking into consideration his impairments as a whole.

Having fully reviewed the record, the Court finds that the ALJ adequately evaluated the issue of obesity, and that there is substantial evidence in the record as a whole to support a finding that obesity was not a severe impairment. There is no medical evidence that obesity imposed any work-related restrictions. Additionally, there is nothing in plaintiff's testimony at the hearing that indicates that he felt he was restricted by his weight. The ALJ noted that

plaintiff's weight fluctuated, but that he continued to work through July of 2006 without any significant limitations imposed by weight. Accordingly, there was no error in the finding regarding obesity not being a severe impairment.

In terms of plaintiff's argument that the ALJ erred in his credibility determination, the ALJ discredited plaintiff in part because he worked at substantial gainful employment beyond his alleged disability date. He did, however, note that plaintiff had had a good work history. The ALJ also noted that the medical records from Dr. Reed, plaintiff's surgeon, suggested that plaintiff tended to exaggerate his symptoms, and that his subjective complaints were inconsistent with his physical abilities and demeanor. He observed that plaintiff's daily activities were inconsistent with debilitating, disabling pain, in that he could drive, could walk half a mile, and only took pain medicine a couple of times a month. The ALJ also relied on diagnostic tests and examinations by physicians to find that plaintiff was not fully credible.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record to support the ALJ's finding regarding plaintiff being partially credible. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

Based on a full review of the record, the Court concludes that the ALJ adequately detailed the reasons for discrediting plaintiff's testimony, and adequately discussed the factors set forth in Polaski. Plaintiff's testimony regarding his daily activities was not consistent with a disabling condition. Additionally, there is evidence that his condition improved with medication, although he only took it infrequently. Further, the record indicates that while he complains of severe back pain, which causes him to have to lie down several times a day for extended periods, he worked at a light duty job for two years after his alleged onset date. The ALJ also found that plaintiff's claim that he had a medical need to lie down and elevate his legs is contradicted by the fact that he is able to drive and only takes pain medication rarely. While there is no question that he suffers from low back pain, the record as a whole does not establish that he has a disabling impairment. Therefore, the Court finds that the ALJ relied on substantial, relevant and supporting evidence in explaining his reasons for discrediting plaintiff's complaints. Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991).

Regarding the RFC finding, having fully reviewed the record, the Court finds that the ALJ's decision reflects that he carefully considered plaintiff's course of treatment, reviewed all the relevant diagnostic tests and medical records, as well as his credibility, and relied on the opinion of the vocational expert. Plaintiff had the burden to come forward with relevant evidence of his restrictions. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Additionally, the Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545;

SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

Here, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC because he properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining his RFC. In terms of taking into account plaintiff's limitations, the ALJ limited him to light work that did not require any lifting below the waist, no climbing, working on ladders, ropes or scaffolding, and no more than occasional postural maneuvers. The RFC finding is a determination based upon all the record evidence, not just medical evidence. Having fully reviewed the record, the Court finds that there is substantial evidence to support the ALJ's determination plaintiff that had the RFC to perform a limited range of light work. Based on the record as a whole, it cannot be said that the ALJ erred in his RFC assessment.

In specific terms of the weight that the ALJ gave to the medical opinions in the record, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision. The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight

to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The ALJ noted that plaintiff's treating surgeon, Dr. Reed, found that plaintiff exaggerated his symptoms; and that x-rays showed that the artificial disc was in perfect position. He observed that there was a conflict in the record among treating and examining physicians. The ALJ reviewed a vocational assessment, which indicated that plaintiff was not employable. He found that this assessment was based on the opinion of Dr. Neighbors, who evaluated plaintiff on one occasion, and opined that he had spinal stenosis and instability in his low back, as of October of 2006. In relying on Dr. Neighbors, the vocational counselor had rejected the treating surgeon's opinion that plaintiff, while having some limitations, was capable of working. The ALJ chose to rely on the opinion of the treating surgeon. It was not error for the ALJ to have relied on the opinion of the treating physician, who performed plaintiff's back surgeries, rather than a doctor who only saw plaintiff on one occasion. He found that Dr. Neighbors's opinion in October of 2006 that plaintiff was incapable of working was in contrast to plaintiff's having worked through mid-July 2006, and observed that plaintiff did not leave that job because he could no longer perform it. There was no sign that plaintiff's condition was worsening. The ALJ also relied on more recent medical records, from 2008, which showed some limitation of motion, but motor strength, sensation and reflexes all within normal range. Additionally, the ALJ observed that a scan of plaintiff's spine showed some postoperative changes, but that there was no spinal stenosis, and his back was stable. It was noted that these results were confirmed by subsequent objective tests, and x-rays, which showed lumbar stability and a good result from his low back surgery. In terms of the opinion of Dr. Fernandez, who saw plaintiff from August of 2008 until January of 2009, and who prepared an MSS, the ALJ rejected his opinion that plaintiff could not work because of the

short-term nature of the treatment, and the doctor's own statement that it was hard to give a definitive and objective assessment.  The record also indicates that Dr. Fernandez's treatment of plaintiff's back pain was mainly limited to prescribing pain medication on three occasions.  The Court finds that there is substantial evidence in the record to support the ALJ's decision regarding the weight he gave to the medical opinions of record, and his decision to give more weight to the opinion of the treating surgeon.

While plaintiff also contends that the ALJ erred in his reliance on the opinion of the vocational expert, the Court has fully reviewed that portion of the record, and finds that the ALJ was justified in relying on the vocational expert's testimony in finding that plaintiff is able to perform a limited range of light jobs in the national economy. See Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir.1991); Trenary v. Bowen, 898 F.2d 1361, 1365 (8th Cir.1990).  The Court finds, accordingly, that the ALJ properly relied on the VE's response to the hypothetical, which was based on the limitations the ALJ found to be credible.  See Stormo v. Barnhart, 377 F.3d 801, 808-09 (8th Cir. 2004).

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment, and that he was not disabled under the Act during the time period in question. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006).   The ALJ's finding that plaintiff was not disabled is supported in the record as a whole.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
 JAMES C. ENGLAND
United States Magistrate Judge

Date: 9/9/11